UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA,           :
        Plaintiff,                  :
                                    :
        v.                          :   Docket No. 1:04-CV-40
                                    :
LARRY BLOCH (d/b/a radio free       :
brattleboro) and                    :
RADIO FREE BRATTLEBORO,             :
        Defendants.                 :
                                    :
_____     :

RULING ON PENDING MOTIONS
(Papers 22, 26, and 27)

The United States of America, acting on behalf of its agency
the Federal Communications Commission ("FCC"), seeks summary
judgment pursuant to Fed. R. Civ. P. 56(c), enjoining defendant
radio free brattleboro ("rfb")[1] from making unlicensed radio
transmissions in violation of the Communications Act of 1934, 47
U.S.C. §§ 151-510.  For the reasons stated below, the
government's motion for summary judgment (Paper 22) is GRANTED
and rfb is ENJOINED from broadcasting without a license.  The
defendants' motions for an order to show cause (Paper 26) and to
consolidate with the case entitled United States v. Frequency of
107.9 MHz, Docket Number 1:05-CV-175 (Paper 27) are DENIED.
Additionally, defendant Larry Bloch is DISMISSED from the case.

_____
    [1]  Rfb's logo deliberately uses lower case letters.

Background

Upon review of the record, and solely for the purpose of this ruling, the Court finds the following facts.  The Communications Act of 1934 was enacted "to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels . . . by persons for limited periods of time, under licenses granted by Federal authority."  47 U.S.C. § 301.  In order to obtain a license, a party seeking to broadcast must submit to the FCC a written application containing the information required by Section 308 and the FCC's implementing regulations.  If an applicant for a broadcast license does not meet FCC requirements, it may request a waiver of the relevant rules in conjunction with its application for a license.  47 U.S.C. § 308; 47 C.F.R. § 73.3566.

Broadcasting without a license, unless an exception applies, violates the Act.  47 U.S.C. § 301[2]; 47 C.F.R. § 15.1.  Certain extremely low-power radio transmissions may be exempt from licensing.  In addition, low-power operations falling within the frequency range of 88-108 MHz on the FM broadcast band are exempted, provided the strength does not exceed 250 microvolts per meter at 3 meters.  47 C.F.R. § 15.239(b).

---

[2]  The statute provides in relevant part:  "No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District . . . except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter."  47 U.S.C. § 301.

For non-exempt low-power stations, regulations promulgated by the FCC in 2001 would allow applications for new classes of ten- and 100-watt station licenses.  47 C.F.R. § 73.854.  The regulation is subject to a law prohibiting any applicant from obtaining a low-power license "if the applicant has engaged in any manner in the unlicensed operation of any station in violation of section 301."  Radio Broadcasting Preservation Act of 2000 ("RBPA"), Pub. L. No. 106-553, 114 Stat. 2762, § 632(a)(1)(B).  The FCC is currently processing applications for 100-watt stations, but it is not yet accepting applications for ten-watt stations and has not set a date by which it will do so.

Rfb is a low-power FM station broadcasting at a power of ten watts to an area of approximately two miles.  Rfb has been on the air since 1998 and operates out of an apartment in the Brooks House, located in Brattleboro, Vermont.  The mission of rfb is to provide an outlet for individuals and community groups to share their diverse views, musical tastes, and interests, and to disseminate local news and information.  Rfb is owned by its members,[3] including dozens of hosts, disc jockeys, and announcers, and the fees its members pay total its operating budget.  Rfb has never been licensed by the FCC, and maintains it

---

[3] Defendant Larry Bloch argues that although he appears as an officer on rfb's incorporation papers, he is simply one member of rfb's non-hierarchical organization and therefore the "d/b/a" designation in this lawsuit is inaccurate.  (Paper 36-2 ¶¶ 1-6.)  The Court acknowledges the point, and moreover, finds that because Bloch's presence does not affect issues being litigated, he is DISMISSED from the lawsuit.  See Fed. R. Civ. P. 21.

is impossible for a ten-watt station to obtain a license under the current FCC licensing scheme.

In May 2003, the FCC learned an unlicensed radio station was broadcasting under the name "radio free brattleboro" on the frequency 88.9 MHz.  Test results indicated that the station exceeded the permissible level for non-licensed low-power radio broadcasts.  FCC Engineer Victor Tagliaferro verbally instructed defendant Larry Bloch of rfb to terminate operation because rfb was in violation of Section 301.  Bloch complied with Tagliaferro's request.  On June 27, 2003, the FCC sent a letter to rfb explaining how operation of rfb had violated federal law and further outlined the penalties for unlicensed operation.  Nevertheless, rfb resumed unlicensed broadcasting on August 22, 2003 on frequency 107.9 MHz.  Again, the FCC conducted tests which showed rfb was operating from the same location, and advised rfb by verbal and written warning that it was operating without a license in violation of law.

On September 10, 2003, the FCC sent another letter to rfb, which, like the previous letter, advised that unlicensed operation of rfb violated federal law, and outlined the penalties for unlicensed operation, including seizure of equipment; it also directed the operators to immediately terminate operation of the unlicensed station.  Rfb attorney Lawrence Hildes sent a letter in response criticizing the FCC for "concentrating its efforts on streamlining the [licensing] process for vast corporations to

further monopolize the airwaves and squeeze out what little local content and ownership is left." The letter also claimed rfb is not interfering with any other broadcasts, and asserted that rfb "has a license of support from a substantial majority of the people of Brattleboro," referring to a town referendum vote.

On January 14, 2004, rfb, through a letter sent by its attorney James Maxwell, offered to stop broadcasting if the FCC would give expedited consideration to the license application submitted by "Vermont Earthworks." The FCC, however, responded that it was unwilling to grant such preferential treatment.

In anticipation of FCC action, rfb brought an action in this Court seeking a preliminary injunction to prevent the FCC from seizing its equipment. (See Docket No. 1:04-CV-37.) That case was dismissed without prejudice at rfb's request so that it might file for injunctive relief in a court with jurisdiction. The FCC brought this action seeking injunctive relief to prevent rfb from continuing to operate without a license in violation of federal law, which the Court initially denied, pending further briefing. Within a month, rfb applied to the FCC for a waiver and expedited review, although it continued to operate. Subsequently, the FCC moved for summary judgment in this action (Paper 22); the FCC also brought a forfeiture action to seize rfb's equipment pursuant to 47 U.S.C. § 510, and seized the equipment on June 22, 2005. (See Docket No. 1:05-CV-175.) Following unsuccessful settlement negotiations, the parties now seek the Court's

determination of the pending motions.

<u>Discussion</u>

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is on the moving party to demonstrate there are no material facts genuinely in dispute.  <u>See</u> <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).  When ruling on a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the party opposing the motion.  <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005).  If the nonmoving party submits evidence which is "merely colorable," however, legally sufficient opposition to summary judgment is not met.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In this case, the government seeks summary judgment on its request pursuant to Section 401(a)[4] to enjoin rfb from broadcasting without a license.  Before considering the merits,

---

[4]  The Court has jurisdiction over the case pursuant to Section 401(a), which empowers this Court to enjoin unlicensed broadcasting.  <u>See</u>, <u>e.g.</u>, <u>Free Speech v. Reno</u>, 1999 WL 147743, *6 (S.D.N.Y. 1999), <u>aff'd</u> <u>sub</u> <u>nom</u> <u>Free Speech ex rel. Ruggiero v. Reno</u>, 200 F.3d 63 (2d Cir. 1999) (per curiam).  Had the FCC issued a formal cease-and-desist order against rfb pursuant to Section 312(b), the Court would have jurisdiction under Section 401(b) to issue a statutory injunction.

the Court addresses the defendants' estoppel argument.  Rfb
argues that because the FCC does not provide licensing
opportunities for ten-watt stations, it should be "estopped from
demanding that such stations produce licenses or be shut down."
(Paper 24 at 3.)  As a matter of law, however, the FCC cannot
authorize rfb, its members, or anyone who has engaged in the
unlicensed operation of any station in violation of Section 301,
to operate a ten-watt station.[5]  See RBPA, Pub. L. No. 106-553, §
632(a)(1)(B); Ruggiero v. F.C.C., 317 F.3d 239, 247-48 (D.C. Cir.
2003) (upholding the character provision as constitutional).
Therefore, estoppel is not appropriate here.  See also Rojas-
Reyes v. I.N.S., 235 F.3d 115, 126 (2d Cir. 2000) (holding that
estoppel should be applied against the government "only upon a
showing of affirmative misconduct").

Turning to the government's request for an injunction,
whether to grant the extraordinary equitable relief of a
permanent injunction requires the plaintiff to show actual
success on the merits, inadequate remedy at law, and a balance of
equities that tips decidedly in favor of the plaintiff.  Auto.
Elec. Serv. Corp. v. Assoc. of Auto. Aftermarket Distrib., 747 F.
Supp. 1483, 1513 (E.D.N.Y. 1990) (citing New York State N.O.W. v.

---

[5]  On a related point, rfb argues in opposition to summary judgment that
the FCC never ruled on rfb's April 2004 application for a license and/or
waiver.  The government reported that the FCC will review the document, but
that awarding a license or waiver to rfb is likely contrary to the RBPA and
regulations.  (Paper 17 at 9.)  Significantly, the FCC must give a
hard look to waiver applications that raise First Amendment concerns, and such
waivers cannot be arbitrarily denied.  Prayze, 214 F.3d 251 (citing WAIT Radio
v. F.C.C., 418 F.2d 1153, 1159 (D.C. Cir. 1969)).

Terry, 886 F.2d 1339, 1362 (2d Cir. 1989)).  As to the merits, it is undisputed that the defendants operated rfb without a license or waiver from the FCC.  As to harm, in similar cases the Second Circuit has ruled that the fact of unlicensed broadcasting gives rise to a presumption of irreparable harm.  See Free Speech ex rel. Ruggiero v. Reno, 200 F.3d 63, 65 (2d Cir. 1999); Prayze FM v. F.C.C., 214 F.3d 245, 250 (2d Cir. 2000).  The fact that the government has seized rfb's equipment does not change this result; the government need not demonstrate irreparable harm greater than a likelihood that future violations will occur.  See United States v. Neset, 235 F.3d 415, 421 (8th Cir. 2001) (upholding permanent injunction against unlicensed broadcaster pursuant to Section 401(a) in similar circumstances).

The defendants argue, however, that the government cannot succeed on the merits of their affirmative defenses, including several constitutional challenges,[6] to warrant the issuance of an injunction.  Here, the Court faces a vexing jurisdictional issue. Whether an unlicensed broadcaster can raise constitutional defenses against the FCC's motion for an injunction pursuant to Section 401(a) is an issue that remains undecided by the Second Circuit.  See Prayze, 214 F.3d at 251 (assuming the district

---

[6]  The defendants argue that the FCC's action should be dismissed as an abuse of discretion under the Administrative Procedures Act, as an impermissible content-based restriction and prior restraint of their First Amendment rights, or as violative of the Commerce Clause and Tenth Amendment. They also challenge the FCC regulations "prohibiting micro radio" as unconstitutional and as violating the FCC's mandate to regulate the airwaves in the public interest.  (Defs.' Ans., Paper 19.)

court had jurisdiction over broadcaster's constitutional challenges in Section 401(a) action because FCC had shown it likely would prevail).[7]  Since <u>Prayze</u>, two circuit courts have addressed the precise issue and concluded that district courts do not have subject matter jurisdiction to adjudicate such challenges.  <u>See</u> <u>Neset</u>, 235 F.3d at 420-21 (8th Cir. 2000) and <u>United States v. Dunifer</u>, 219 F.3d 1004, 1006-08 (9th Cir. 2000) (both holding that 28 U.S.C. § 2342 grants the court of appeals exclusive jurisdiction over all proceedings to enjoin, set aside, suspend, or determine the validity of FCC final orders made reviewable by 47 U.S.C. § 402(a)).  <u>See also</u> <u>United States v. Szoka</u>, 260 F.3d 516, 526-30, n.13 (6th Cir. 2001) (parsing the different factual scenarios in relevant case law and reserving judgment on this issue, but holding that district courts cannot consider an unlicensed broadcaster's constitutional defenses to a motion for an injunction seeking to enforce an FCC formal cease-and-desist order).

Because the Second Circuit has not ruled on the issue, however, and in view of the weight of circuit court decisions, the Court concludes it does not have jurisdiction over the

---

[7]  As the <u>Prayze</u> Court noted, however, courts may not assume their own jurisdiction in order to reach the merits.  <u>See</u> <u>Prayze</u>, 214 F.3d at 251, n.3 (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 101 (1998)).

defendants' constitutional arguments.[8]  But see United States v.
Any and All Radio Station Transmission Equip., 2004 WL 2848532,
*9 (S.D.N.Y. 2004) (holding there is no basis to find that the
court lacks jurisdiction to adjudicate constitutional challenges
of FCC regulations, as opposed to orders, but that a First
Amendment challenge of the FCC's prohibition on low-power
broadcasting was moot in light of the FCC's lifting of the
prohibition in 2001).

Even if the Second Circuit were to clarify that district
courts have subject matter jurisdiction in these circumstances,
it is unlikely the defendants would succeed on their
constitutional challenges.  See Any and All Radio, 2004 WL
2848532, *9, n.7 (citing Ruggiero v. F.C.C., 317 F.3d 239, 242
(D.C. Cir. 2003) (holding the statutory provision in RBPA
permanently barring anyone who has ever operated an unlicensed
radio station from obtaining a low-power FM radio license did not
violate the First or Fifth Amendments)).

The defendants may yet raise their constitutional challenges
of FCC regulations in administrative proceedings if the
license/waiver application is denied, pursuant to 47 U.S.C. §
402(b)(1); rfb may also petition for rulemaking to change the
existing rules, 47 C.F.R. § 1.401.  Because the government has

---

[8]  Additionally, the defendants' APA argument is without merit.  See Top
Choice Distrib. v. United States Postal Serv., 138 F.3d 463, 465-67 (2d Cir.
1998) (holding the well-established rule that courts can only review "final
agency decisions," precluding jurisdiction under the APA in similar
circumstances).

met its burden for obtaining an injunction, however, and the
defendants have failed to show that there are any material facts
genuinely in dispute, the Court concludes the government is
entitled to an injunction against rfb.

The Court turns next to the defendants' pending motions.
First, the defendants ask the Court to consolidate this case with
the forfeiture action, Docket Number 1:05-CV-175.  (Paper 27.)
Rule 42(a) grants trial judges discretion to determine whether to
consolidate actions to "avoid unnecessary costs or delay."  See
also Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.
1990).  The burden is on the moving party to demonstrate the
actions are based on common questions of law and fact, and that
efficiency outweighs any prejudice or confusion that might result
from consolidation.  See id. at 1284-85.  Because the Court has
resolved the present case by summary judgment, and because
consolidation at this time may only complicate the forfeiture
case, the defendants' motion to consolidate is DENIED.

The defendants also move for an order to show cause why the
government should not be held in contempt for initiating the
forfeiture action in the manner it did, and urge the Court to
exercise its equitable powers to sanction the government.  (Paper
26.)  The defendants argue the government brought the forfeiture
action in bad faith and in derogation of this Court's authority
during the pendency of the summary judgment motion.  Neither
argument, however, is grounded in law or fact.  The government

was authorized to seize the equipment pursuant to Section 510, upon the Magistrate Judge's finding of probable cause that the equipment was subject to forfeiture.  Moreover, the government put the defendants on notice that it might pursue this alternative.  The Court finds, therefore, that the government did not act in bad faith and declines to impose sanctions.  The defendants' motion for an order to show cause is consequently DENIED.

<u>Conclusion</u>

For the reasons stated above, the defendants' motions for an order to show cause (Paper 26) and to consolidate this case with the case at Docket Number 1:05-CV-175 (Paper 27) are both DENIED. Additionally, defendant Bloch is DISMISSED from the case.  The government's motion for summary judgment (Paper 22) is GRANTED. The defendants and all persons in active concert or participation with them are ENJOINED from (a) making radio transmissions within the United States unless and until they first obtain a license or waiver from the FCC; and (b) doing any act, whether direct or indirect, to cause unlicensed radio transmissions or to enable such radio transmissions to occur.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 31st day of March, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge